IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STEVEN RAY MILAM                    §
(TDCJ No. 1836907),                 §
                                    §
            Movant,                 §
                                    §
V.                                  §        No. 3:14-cv-1924-L-BN
                                    §
UNITED STATES OF AMERICA,           §
                                    §
            Respondent.             §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This action – initiated when Movant Steven Ray Milam, proceeding *pro se*,

submitted a motion [Dkt. No. 3] the Court has construed as a motion to vacate, set

aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255 – has been referred

to the undersigned United States magistrate judge for pretrial management pursuant

to 28 U.S.C. § 636(b) and a standing order of reference from United States District

Judge Sam A. Lindsay. The undersigned issues the following findings of fact,

conclusions of law, and recommendation that Respondent's motion to dismiss [Dkt. No.

12] should be granted and that this action should be dismissed as barred by

limitations.

## Background

On May 22, 2012, Movant pleaded guilty, pursuant to a plea agreement, to two

counts of a superseding information – one count of brandishing a firearm during or in

relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), and one count

of using, carrying, and brandishing a firearm during or in relation to a crime of

violence, in violation of 18 U.S.C. § 924(c)(1)(C)(i), and, on October 29, 2012, he was sentenced to consecutive sentences of 120 months' imprisonment as to the first count and 300 months' imprisonment as to the second count. *See United States v. Milam*, No. 3:12-cr-32-L, Dkt. Nos. 23-27 & 45 (N.D. Tex.).

The Court's judgment provides that Movant's total term of 420 months' imprisonment "shall run concurrently with any sentence imposed in Case No. F-1145923, pending in the Dallas County Criminal District Court 3 [sic], in Dallas, Texas." No. 3:12-cr-32-L, Dkt. No. 45 at 2. Movant did not file a direct appeal.

On January 25, 2013, in the above-referenced state criminal action, and after pleading guilty to attempted capital murder of a police officer, enhanced, Movant was sentenced to 28 years' imprisonment. *See State v. Milam*, No. F-11-45923-I (Crim. Dist. Ct. No. 2 of Dallas County, Tex.). Movant also did not file a direct appeal as to this conviction and sentence. This conviction, however, has since been set aside by the Texas Court of Criminal Appeals (the "TCCA"). *See Ex parte Milam*, No. WR-81,309-01, 2014 WL 2443169 (Tex. Crim. App. May 21, 2014) (per curiam); *see also* Dkt. No. 3 at 11-15 (findings of fact and conclusions of law of the state habeas court dated March 26, 2014). As State District Judge Don Adams explained, in recommending that Movant's state application for a writ of habeas corpus should be granted:

> The applicant asserts that according to his plea agreement, he should be serving his sentence in the federal penitentiary system. Prior to entering the plea in this case, the applicant was sentenced to 420 months in the federal system with his sentence concurrent with the sentence in this state charge. It is clear in the emails from trial counsel to the prosecutor that the primary concern of the applicant was his placement in the federal prison system. See attached emails dated

-2-

January 7, 2013 and January 24, 2013 from Brian Alexander to the prosecutor. January 25, 2013 the court accepted the guilty plea made pursuant to the plea bargain agreement with a 28-year sentence. At the conclusion of the hearing there was a discussion on the record about the state sentence being concurrent with the federal sentence and the applicant being returned to the federal prison. Clearly the prosecutor, the court and defense counsel assumed that the applicant would be returned to the federal system. This is not a promise that the court could make to the applicant. *See Moody v. State*, 991 S.W.2d 856 (Tex. Crim. App. 1999). It is the opinion of this court that promises were made to the applicant that could not be kept. Since a state court cannot authorize a state sentence be served in federal court, the plea bargain agreement cannot be kept and the guilty plea must be withdrawn in this case as it was not voluntary.

While it is clear that the relief sought in this case is to be transferred to the federal prison system, neither this court nor the Court of Criminal Appeals has authority to make that happen. The only relief available for this complaint is to have the plea withdrawn and the case sent back to the trial court to answer to the indictment. Clearly, the plea was not voluntary in this case because it was based on the assumption that the applicant would serve his time in the federal system. While the plea bargain agreement does not include the provision that the sentence would be served in the federal system, the discussion at the time of the plea indicates that all parties were under the impression that the applicant would be returned to the federal system to serve his federal and state sentence concurrently in El Reno.

The court cannot and will not hold counsel ineffective in this case. The record reflects that at all times counsel insisted that the agreement in this case include having the state sentence served in the federal system. The State and the court apparently agreed.

Based on all the documentation in this case, the court holds that the plea was not voluntary. The court recommends that the plea be withdrawn and the applicant be made to answer the pending indictment. It should be made clear to the applicant that the state court has no authority to authorize the state sentence be served in the federal system. No new plea bargain agreement will include the provision that this state sentence will be served in the federal system. If the applicant feels by the federal court promised him that his sentence would be served in the federal system, he should petition the federal court to be transferred to the federal prison system. The only remedy in state court for the evidence presented in this writ is to have the plea withdrawn. The court recommends that the guilty plea be withdrawn and applicant be made to face the charges in the indictment.

Dkt. No. 3 at 12-14.

Through his Section 2255 motion, which Movant declares was placed into the prison mailing system on May 15, 2014, *see* Dkt. No. 3 at 10, Movant asserts two grounds for relief. First, he claims that his federal convictions were obtained through invalid guilty pleas – that is, his guilty pleas were neither entered voluntarily, knowingly, and intelligently – because "claims were made to [him] that were not fulfilled[, as he] was constantly instructed by [his] attorney that [he] would serve out [his] sentence in federal custody" and "that the disposition of [his] pending state charge ... would be a mere formality that would be run concurrent [with his federal sentences] and expire before discharging [his] federal sentence[s]." *Id.* at 6-7. Thus, Movant appears to assert that he entered into his federal guilty pleas under the impression that he would "never spend[] a single day in state custody." *Id.* at 7. Related to this first ground for relief,  Movant also asserts a claim that his attorney in the federal criminal proceeding, also Brian Alexander, provided constitutionally-ineffective assistance. *See id.* at 6.

The government has moved to dismiss the Section 2255 motion on the ground that it is untimely. *See* Dkt. No. 22. And Movant has filed a response. *See* Dkt. No. 13.

The undersigned has concluded that the motion to dismiss should be granted and that the Court should dismiss the Section 2255 motion [Dkt. No. 3] as barred by limitations.

## Legal Standards

Section 2255 proceedings are governed by a one-year statute of limitations. *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996, Pub.L. 104-132, 110 Stat. 1214 (1996) (the "AEDPA"), *codified at* 28 U.S.C. § 2255(f). The statute provides that the limitations period shall run from the latest of –

> (1)     the date on which the judgment of conviction becomes final;
>
> (2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

The one-year limitations period is also subject to equitable tolling in "rare and exceptional circumstances." *See, e.g.*, *United States v. Riggs,* 314 F.3d 796, 800 n.9 (5th Cir. 2002) (citing *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1998)).

> "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (internal quotation marks and citation omitted). "[T]he principles of equitable tolling ... do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990). Unfamiliarity with the legal process does not justify equitable tolling. *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999).

*United States v. Kirkham*, 367 F. App'x 539, 541 (5th Cir. 2010) (per curiam) (in which the United States Court of Appeals for the Fifth Circuit affirmed the district court's denial of equitable tolling because movant "was not misled about his cause of action or prevented in an extraordinary way from asserting his rights" but, instead, failed to mail the Section 2255 motion to the correct court within the limitation period, an error the court of appeals characterized as "a 'garden variety' claim of excusable neglect, which is insufficient to justify application of the doctrine of equitable tolling" (quoting *Irwin*, 498 U.S. at 96)).

The Supreme Court has determined that the AEDPA statute of limitations also can be overcome by a showing of "actual innocence." *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). The actual innocence gateway, however, is only available to a movant who presents "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 1936 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). That is, the new, reliable evidence must be sufficient to persuade the Court that "'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* at 1928 (quoting *Schlup*, 513 U.S. at 329); *see also Johnson v. Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992) ("The Supreme Court has made clear that the term 'actual innocence' means *factual*, as opposed to *legal*, innocence – 'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence, as the Court stated in *McCleskey [v. Zant*, 499

U.S. 467 (1991)], means that the person did not commit the crime." (footnotes omitted and emphasis in original)).

## Analysis

As to the timeliness of his Section 2255 motion, Movant asserts that "[t]he information to file [it] was not available to [him] until April 3, 2014, the date he received the state court's 'findings of fact and conclusions of law' dated March 26, 2014" and contends that he "filed for relief in a timely manner (with the state) on July 17, 2013 which was well before my state and federal deadlines." Dkt. No. 3 at 9. Accordingly, Movant appears to assert that his Section 2255 motion is timely pursuant to 28 U.S.C. § 2255(f)(4), which is also the provision of Section 2255(f) addressed in the government's motion to dismiss. *See* Dkt. No. 12.

> For this provision to apply, "a petitioner's diligence must merely be 'due' or 'reasonable' under the circumstances." *Starns v. Andrews*, 524 F.3d 612, 619 (5th Cir. 2008) (analyzing 28 U.S.C. § 2244(d)(1)(D)). As the Supreme Court has explained, "diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize" that he should act. *Johnson v. United States*, 544 U.S. 295, 308 (2005). In applying § 2255(f)(4), "[t]he important thing is to identify a particular time when ... diligence is in order." *Id.*

*United States v. Jackson*, 470 F. App'x 324, 327 (5th Cir. 2012) (per curiam). And "[i]n determining whether § 2255(f)(4) should be applied, '[t]he relevant inquiry should focus on when the factual predicate of a claim could have been discovered, as opposed to the date on which the petitioner has in his possession evidence to support his claim.'" *Huffman v. United States*, No. 2:10cv50, No. 2:05cr18, 2010 WL 5418936, at *4 (N.D. W. Va. Oct. 26, 2010), *rec. adopted*, 2010 WL 5418934 (N.D. W. Va. Dec. 26, 2010) (quoting *Facundo v. United States*, No. 1:10cv78, No. 1:07cr19, 2010 WL 2245992, at

*3 (W.D.N.C. June 2, 2010) (in turn quoting *Gonzalez-Ramos v. United States*, No. 05 Civ. 3974, 99 CR. 1112 (LAP), 2007 WL 1288634, at *7 (S.D.N.Y. May 2, 2007))).

For example, in *Jackson*, the Fifth Circuit found that the "facts supporting [Jackson's] claim" that his "attorney allegedly incorrectly advised him that his federal sentence would run concurrently with his state sentence could have been discovered immediately after Jackson's sentencing in federal court," in 1993, "well before Jackson began serving his federal sentence in December 2008," because statements made by the court at Jackson's sentencing and statements made in Jackson's Presentence Investigation Report and the court's judgment informed Jackson that his federal sentence as to one count of conviction would run consecutive to his federal sentences imposed as to separate counts of conviction. 470 F. App'x at 327-28 ("At the very least, therefore, Jackson could have easily discovered in 1993 that his sixty month sentence on Count 5 would run consecutively to his state sentence by virtue of 18 U.S.C. § 924(c)(1)(C)(ii)."); *see also id.* at 328 (noting that "Jackson could have discovered these facts through his own reasonable inquiry, or with the assistance of counsel").

Similarly, here, the factual predicate of both claims Movant presents is that his counsel allegedly incorrectly advised him that he would serve his state and federal sentences concurrently in federal custody. Movant, like Jackson, could have easily discovered, through a reasonable inquiry at the time he was sentenced, that he is not "entitled to serve his sentences in any particular facility." *United States v. Osborne*, 122 F. App'x 163, 2005 WL 419488, at *1 (5th Cir. Feb. 23, 2005) (per curiam) (affirming denial of a writ of habeas corpus *ad prosequendum* by a state prisoner who also had a

pending federal sentence in through which he requested, among other things, "that the district court return him to federal custody ... and permit him to serve his state sentence concurrently with the remainder of his federal sentence" (citing *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996); *Saulsbury v. United States*, 591 F.2d 1028, 1031, 1035 (5th Cir. 1979))).

It is well established that "[a] prisoner does not possess a constitutional right to be placed, or not to be placed, in a particular prison facility." *Avila Pena v. Pugh*, No. CV306-057, 2006 WL 2444084, at *2 n.6 (S.D. Ga. Aug. 22, 2006) (citing *McKune v. Lile*, 536 U.S. 24, 39 (2002); *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *see also Tighe*, 100 F.3d at 42 ("A prisoner has no constitutionally protected interest in a particular facility ...." (citing *Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983))).

Indeed, "[t]he district court did not have the authority to order incarceration at any particular facility as the Bureau of Prisons is solely responsible for that decision." *United States v. Riley*, 84 F. App'x 717, 2003 WL 23101850, at *1 (3d Cir. Dec. 30, 2003) (per curiam) (citing 18 U.S.C. § 3621). Section 3621 in pertinent part provides:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering [enumerated statutory factors].

*Id.* § 3621(b).

"The phrase 'or otherwise' refers to the BOP's authority to designate federal prisoners to state prisons." *Jefferson v. Berkebile*, 688 F. Supp. 2d 474, 486 (S.D. W. Va.

2010) (citing *United States v. Evans*, 159 F.3d 908, 911-12 (4th Cir. 1998)). As explained by the United States District Court for the Western District of Louisiana, in a case in which, like Movant, a habeas petitioner was serving both a federal and a state sentence:

> Here, petitioner attacks the <u>place</u> of his incarceration. As such, petitioner lacks standing. He has no constitutionally protected right to be incarcerated in any particular prison system. *Olim v. Wakinekona*, 461 U.S. 238, 245, 247-48 (1983). Petitioner has been sentenced by two sovereigns – the State of Louisiana and the United States of America. Where he serves his sentences is a matter for those two sovereigns to decide. *Simpson v. Cockrell*, 273 F.3d 1100 (5th Cir. 2001) (citing *United States v. McCrary*, 220 F.3d 868, 870-71 (8th Cir. 2000)).
>
> Petitioner was committed to the custody of the United States by the United States District Court. If the United States should thereafter require him to serve his entire federal sentence in the custody of the State of Louisiana, that decision would be within the purview of the two sovereigns. The Federal Bureau of Prisons has clear statutory authority to make this kind of decision. *See* 18 U.S.C. § 3621(b).

*United States v. Waters*, No. 3:05-cr-30029, No. 3:07-cv-0861, 2007 WL 2479597, at *2 (W.D. La. May 24, 2007) (emphasis in original), *aff'd, Waters v. United States*, 331 F. App'x 278, 280 (5th Cir. 2009) (per curiam) ("The district court correctly determined that Waters' claim that the BOP lacked discretion to determine that he would serve all, or part of, his federal sentence in the Louisiana state prison system did not implicate a constitutionally protected right." (citing *Olim*, 461 U.S. at 246-47)); *accord Fuselier v. Mancuso*, 354 F. App'x 49, 49 (5th Cir. 2009) (per curiam).

Movant's own briefing, moreover, undermines his argument that the Section 2255 motion could not have been brought until he reviewed Judge Adams's findings and conclusions on April 3, 2014. In his reply, Movant states that his "custody issue ...

emerged [on] February 21, 2013, when he was taken into custody by the Texas Department of Criminal Justice." Dkt. No. 13 at 11; *see also* Dkt. No. 13-2 at 31 ("2-21-13 ... Transferred to T.D.C.J. custody.... This is the first date day Movant realized something was wrong."). *Compare id.*, *with Jackson*, 470 F. App'x at 328 (Jackson's affidavit outlining his "nagging concerns throughout his time in state prison that his federal sentence would not in fact run concurrently to his state sentence ... contradict his assertion that he did not think to question his attorney's alleged advice until December 2008."); *Shipley v. United States*, No. 2:11-CV-105, No. 2:09-CR-4, 2012 WL 5331252, at *5 (N.D. W. Va. Oct. 25, 2012) ("The petitioner in this case specifically states that the was expecting to be returned to federal custody and was surprised to be sent to West Virginia state prison." Such an "argument closely parallels the argument in *Jackson* pertaining to nagging concerns" and undercuts a Section 2255(f)(4) argument.).

Counsel's allegedly erroneous advice as to Movant's future custody – "the fact[] supporting the ... claims presented," 28 U.S.C. § 2255(f)(4) – was known to Movant at the time his convictions became final. *See, e.g., United States v. Scruggs*, 691 F.3d 660, 670 (5th Cir. 2012) ("the factual basis for Scruggs's claim is merely [a conflict of interests that existed during the representation,] which "Scruggs knew or easily could have discovered ... by the date on which his conviction became final"; therefore, "his ineffective assistance claim is untimely" under Section 2255(f)(4)). Here, moreover, Movant himself admits that he was fully aware that "something was wrong" with regard to counsel's custodial assurances on February 21, 2013. Dkt. No. 13 at 11; Dkt.

No. 13-2 at 31. But he did not bring his Section 2255 motion until more than one year later.

Accordingly, the timeliness of Movant's Section 2255 motion must be calculated under Section 2255(f)(1) based upon the date on which his October 30, 2012 convictions in this Court became final, which – because there was no direct appeal – was 14 days later, on November 13, 2012. *See* FED. R. APP. P. 4(b)(1)(A)(I); *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008). The Section 2255 motion filed more six months after November 13, 2013 is therefore clearly untimely unless equitable tolling applies.

Movant is not entitled to equitable tolling. While he contends that he "filed for relief in a timely manner (with the state) on July 17, 2013 which was well before my state and federal deadlines," Dkt. No. 3 at 9, no "extraordinary circumstance" prevented Movant from asserting the claims he now brings in his Section 2255 motion in federal court at the same time he filed for relief in state court. *See, e.g., Holland v. Florida*, 560 U.S. 631, 649 (2010) (a movant "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing" (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))). As this language implies, "the burden is on" Movant "to show rare, exceptional, or extraordinary circumstances beyond his control that made it impossible for him to timely file" his Section 2255 motion. *Montes v. United States*, No. 3:13-cv-1936-K, No. 3:09–cr-286-K (4), 2014 WL 5286608, at *3 (N.D. Tex. Oct. 15, 2014) (citations omitted). This Movant has not done.

Movant, however, does point to a letter dated June 24, 2013 he claims he sent Judge Lindsay. *See* Dkt. No. 13-1 at 47-51. Through this letter, Movant complained about his custodial situation and requested "that you review the materials/documents [he has] enclosed and bring [him] before [the] Court to be remanded back to federal custody as were the intentions all along by federal and state authorities." *Id.* at 51. He also informed the Court that he had written to the BOP's regional office in April 2013 and further requested that the Court not inform Mr. Alexander – "He is no longer my attorney. I am in the process of filing a grievance with the State Bar of Texas to have him disbarred and/or sanctioned due to several violations on his behalf during the course of my state and federal representations." *Id.*

As discussed above, the Court lacks the authority to place Movant into a particular facility or even a particular prison system. Such responsibility rests solely with the BOP. So the Court was powerless to address the concerns in Movant's letter. Moreover, the Court was under no duty to construe Movant's vague reference to his concerns with Mr. Alexander as Movant asserting that Mr. Alexander had violated his rights under the Sixth Amendment or that Movant's guilty plea entered in this Court was neither voluntary, knowing, nor intelligent.

Quite simply – regardless of its underlying merit – if anything prevented the timely filing of Movant's Section 2255 motion it was an ignorance of the law. *See, e.g.,* Dkt. No. 3 at 14 (Judge Adams's habeas findings and conclusions: "If the applicant feels by the federal court promised him that his sentence would be served in the federal system, he should petition the federal court to be transferred to the federal prison

-13-

system. The only remedy in state court for the evidence presented in this writ is to have the plea withdrawn."). But, in this circuit, there is a "long line of cases holding that mere ignorance of the law or of statutes of limitations is insufficient to warrant tolling." *Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000) (citations omitted); *see also Bartley v. La. Dep't of Corrs.*, Civ. A. No. 06-2441, 2009 WL 2872932, at *6 (E.D. La. Sept. 2, 2009) ("Bartley's ignorance of the law ... has caused his downfall. There is no evidence to show that the state prevented him from filing his federal petition or that he was deceived in any way by either court or attorney with regard to the appropriate forum in which to file. Without such a showing, this court must find his federal habeas application untimely filed." (footnote omitted)).

Because Movant is neither entitled to statutory nor equitable tolling, his Section 2255 motion, filed more than one year and six months after his convictions became final, is barred by the applicable statute of limitations.

## Recommendation

The Court should grant Respondent's motion to dismiss [Dkt. No. 12] and dismiss the Section 2255 motion [Dkt. No. 3] as barred by limitations.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

-14-

specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 30, 2015

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE